IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FREDERICK HUDDLESTON                                                 PLAINTIFF

v.                                                        CAUSE NO: 1:22-CV-48-SA-RP

COOPER TIRE & RUBBER
COMPANY                                                             DEFENDANT

ORDER AND MEMORANDUM OPINION

On March 15, 2022, Frederick Huddleston commenced this action by filing his Complaint [1] against Cooper Tire & Rubber Company ("Cooper Tire"). Now before the Court is Cooper Tire's Motion for Summary Judgment [42]. The Motion [42] has been fully briefed and is now ripe for review.

*Factual Background*

Frederick Huddleston, a 60-year-old black male, began working for Cooper Tire in an entry-level position on August 4, 1986. In 1995, Huddleston was promoted to a Tire Assembly Lead. He held his Lead role until October 2020. According to his Complaint [1], Huddleston has an extensive medical history, and on July 16, 2020, he took leave under the FMLA after suffering a heart attack. He returned to work on September 2, 2020.

On October 20, 2020, Cole Goodson, the Tire Assembly Operations Manager at the time, had a meeting with Huddleston and informed him that he was being demoted from his Lead position. Denieta Cantrell, the HR Specialist, was also present during the meeting. Huddleston contends that he was not given a reason for his demotion, but Cooper Tire alleges that Huddleston's demotion was a part of the plant restructuring process that began in late 2019. According to Cooper Tire, Goodson and other members of the company's leadership made the decision to demote

Huddleston based on poor performance of his job duties. Cooper Tire contends that the "employees who displayed poor job performance were moved to other roles during the realignment." [43] at p. 2.

According to both Goodson and Cantrell, Huddleston was given a list of lower-paying jobs to choose from. He chose the scrap salvage position, a level 1 paying job.[1] Although Huddleston was demoted in October, Cooper Tire contends Huddleston was informed at that time that his pay would remain the same for six months, and then it would change sometime in April to match his demotion. Huddleston alleges that it was unclear to him whether his pay was ever supposed to decrease.

Following his demotion, Huddleston applied for two Lead positions. He applied for the first position on October 29, 2020—nine days after he was informed of the demotion. He was selected for an interview but ultimately was not chosen for the job. He applied for a second Lead position sometime between January 6, 2021 and January 13, 2021.[2] This time, Huddleston was not selected for an interview. Cooper Tire contends that Huddleston did not get an interview because of a company policy prohibiting employees from reinterviewing for a position that they interviewed for less than six months ago. Huddleston contends that the employees who were selected for both of the positions were less qualified than him and were chosen over him because

---

[1] For context, Huddleston's Lead position was a level 4 paying job. In his deposition, he testified that, during his demotion meeting, he was given a list of jobs to choose from which ranged from level 1 to level 3. It is unclear whether there were any level 4 jobs included on the list.

[2] In her affidavit, Cantrell stated that Huddleston applied for the position sometime between January 6, 2021 and January 13, 2021. *See* [42], Ex. 13. Cantrell's personal notes dated January 6, 2021 were attached to Cooper Tire's Motion [42]. The notes provide: "I posted the job for Bias D crew leader. Freddy [Huddleston] turned in a letter to be considered. Nine candidates applied and the top five were interviewed. We did not interview Freddy because he had just been demoted from the job within the last 90 days and his demotion was based on performance." [42], Ex. 13 at p. 2. This would, of course, imply that Huddleston applied for the position sometime before January 6, 2021. In his affidavit, Huddleston says that he applied for the second Lead position in January 2021. Although he does not provide an exact date, the timeline is consistent with Cantrell's affidavit and personal notes. *See* [47], Ex. 1.

they are white.

On February 22, 2021, Huddleston filed his first EEOC Charge alleging race, age, and disability discrimination in connection with his demotion and with not being selected for the other Lead positions. On July 22, 2021, Huddleston filed his second EEOC Charge, alleging that his pay would decrease because of the EEOC Charge he filed in February.[3] In his Complaint [1], Huddleston alleges retaliation under Title VII, the ADA, and the ADEA. Cooper Tire seeks dismissal of all of Huddleston's claims.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the

---

[3] Importantly, the Court notes that Huddleston's pay was set to decrease in April 2021. However, in his second EEOC Charge, Huddleston contends that May 22, 2021 is when Cantrell informed him that his pay would be decreasing. Furthermore, by the time he filed his second EEOC Charge on July 22, 2021, Huddleston contended that "the reduction in pay has not yet gone into effect, as far as [he] knows, but is imminent according to Cantrell." [1], Ex. 1.

inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted above, Huddleston alleges that Cooper Tire retaliated against him in violation of Title VII, the ADA, and the ADEA. At this juncture, the Court reiterates that Huddleston has asserted only retaliation claims—not discrimination claims. He recently requested to amend his Complaint [1] to add general discrimination claims; however, the Court denied that request for multiple reasons. *See* [61, 69]. The scope of this lawsuit is therefore limited to Huddleston's retaliation claims.

Nevertheless, the Court notes that, in filing their respective Memoranda in connection with the present Motion [42], the parties expended some effort briefing general discrimination claims. From Cooper Tire's perspective, perhaps this was done out of an abundance of caution in the event the Court permitted Huddleston to amend his Complaint [1] or construed the Complaint [1] as having asserted general discrimination claims. However, having reviewed the Complaint [1], and in light of the Court's previous Order [61], it is clear that only retaliation claims were alleged in the Complaint [1]. While making this distinction, the Court emphasizes that it has nevertheless considered the entirety of the parties' respective filings—despite the fact that some of the

4

arguments were raised in the context of general discrimination claims.

Huddleston contends that Cooper Tire retaliated against him in violation of Title VII, the ADA, and the ADEA; however, the same elements are applicable as to claims filed under these three statutes. *See Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013); *Johnson v. Halstead*, 916 F. 3d 410, 420 (5th Cir. 2019).

"To establish a prima facie case of retaliation under the ADA, Title VII, [or the ADEA], a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454 (additional citations omitted).

In his Complaint [1], Huddleston contends that he was subjected to two different adverse employment actions. First, he alleges that he was retaliated against when his pay was cut. Second, he argues he was retaliated against when he was not promoted to a Lead position.

Turning to his first argument, Huddleston alleges that he was retaliated against when his pay was set to decrease from $25.11 per hour to $20.56 per hour. In his second EEOC Charge, Huddleston specifically argues that "[he] believes [Cooper Tire] is reducing his pay because [he] complained about race, age, and disability discrimination and because he filed an EEOC charge of discrimination." [1], Ex. 1. The crux of Huddleston's argument is that the reason his pay was cut was because he filed the first EEOC Charge (which again was filed on February 22, 2021).

Cooper Tire concedes that Huddleston engaged in a protected activity when he filed his first EEOC Charge. Cooper Tire further concedes that an adverse employment action occurred when Huddleston's pay was cut. However, Cooper Tire argues that Huddleston cannot prove causation because the decision to reduce Huddleston's pay occurred *prior* to the protected activity.

Cooper Tire specifically argues, that "as early as October 20, 2020—four months before the filing of his first EEOC Charge and nine months before the filing of his second EEOC Charge—Huddleston knew that his pay would decrease, in alignment with his demotion." [43] at p. 7.[4]

To support its position that Huddleston knew his pay would decrease, Cooper Tire cites portions of Huddleston's deposition:

> Q. So it was understood at the October 20th meeting, that your pay would change once you took the other job?
>
> A. I was supposed to know that. I was supposed to know that, but—
>
> . . .
>
> Q. *Did anyone at the October 20th meeting tell you that your pay would stay the same for a while, and then it would change?*
>
> A. *Yes.*
>
> Q. Who told you that?
>
> A. I don't – I want to say that right there falls in Nieta's area, because she was the one who informed me when it was going to go to level 1 pay. So that would fall under her, Denieta Cantrell.
>
> . . .
>
> A. I was – at the October meeting…and [Cole] [] said, "Well, we'll try [sic] throw you some overtime in there," because he knew it was a low-paying job or the job eventually will be, you know, when whatever it is ran out, how the pay scale did, that's what I would be making.

---

[4] In his response Memorandum [48], Huddleston does not respond to Cooper Tire's argument that he cannot establish a *prima facie* case as it relates to this claim—instead only arguing in favor of his second retaliation claim. As Cooper Tire points out, this Court has recurringly held that a plaintiff's "failure to respond amounts to an abandonment of the claims." *Johnson v. Univ. of Miss.*, 2022 WL 164545, at *5 (N.D. Miss. Jan. 18, 2022) (citing *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012)). Although it could, on this basis alone, dismiss this claim, the Court will nevertheless consider the merits.

[43] at p. 7-8 (emphasis added).

Cooper Tire also argues that Huddleston's letter to the EEOC Investigator[5] proves he was on notice that his pay would decrease. In the letter to the EEOC Investigator, Huddleston states, "[Goodson] kept suggesting to me while I was in his office to take a job called Belt Reclaimer…the job was a lower paying job *and I would have to take a pay cut come April.*" [42], Ex. 6 at p. 1 (emphasis added).

To further support the contention that Huddleston knew his pay would decrease prior to filing his first EEOC Charge, Cooper Tire relies on a portion of Cantrell's deposition:

> Q. And in the October 2020 meeting when you all informed Mr. Huddleston of his demotion, was he also informed that his pay would change to the level of the job he chose?
>
> A. It was.

[42], Ex. 5 at p. 6.

The Fifth Circuit has held that adverse employment actions that predate the protected activity cannot be relied upon to state a viable retaliation claim. *Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 462 (5th Cir. 2008). In *Watkins*, Richard Watkins, a long-term employee of the Texas Department of Criminal Justice, filed suit against his employer alleging hostile work environment, disparate treatment, and retaliation in violation of Title VII. *Id.* at 459. He based his claims on several events that took place between 1999 and 2004. *Id.* at 460. As for Watkins' retaliation claim, the court concluded that, for purposes of his lawsuit, he engaged in a protected activity on February 7, 2002 when he sent an interoffice communication making complaints based on race. *Id.* at 462. The court ultimately concluded that there was no causal connection between

---

[5] Huddleston's letter to the EEOC Investigator does not include a date. However, the letter references information about Huddleston's pay decrease. Therefore, the Court will assume the letter was submitted in connection to Huddleston's second EEOC Charge.

7

the protected activity and his complaints, and "any alleged adverse employment actions prior to [February 7, 2002] cannot serve as a part of a retaliation claims because *there was nothing to retaliate against.*" *Id.* (emphasis added).

Further, in *Stevenson v. Williamson*, the District Court for the Middle District of Louisiana held that when an adverse employment action occurs prior to the protected activity, causation does not exist. 547 F. Supp. 2d 544, 555 (M.D. La. 2008).[6] There, Thalia Stevenson, the director of the Bureau of Licensing within the Department of Social Services, filed suit against her employer alleging a denial of merit wage increase and a violation of her First and Fourteenth Amendment rights. *Id.* at 547-548. In an amended complaint, she added multiple claims including a claim of retaliation. *Id.* at 549. She alleged that she was retaliated against when "she was suspended, denied a pay raise, and transferred from her post as director of the Bureau of Licensing" after she "previously protested the Department of Social Services' alleged failure to consistently promote black persons" and "advised investigators that the Secretary of the Louisiana Department of Social Services, back-dated full licenses for facilities that were allegedly not in compliance with state or federal law." *Id.* at 545.

The district court determined that Stevenson engaged in a protected activity when she filed an EEOC Charge on December 28, 2005. *Id.* The court also found that there was an adverse employment action when she was suspended from her job and transferred to another department sometime in the early spring of 2005. *Id.* However, the court found that Stevenson could not meet the third prong—there was no causal link between the protected activity and the adverse employment action:

---

[6] The Fifth Circuit affirmed the judgment of the district court. *See Stevenson v. Williamson*, 324 F. App'x 422, 423 (5th Cir. 2009).

> No causal link can exist where, as here, *a claimed adverse employment action occurred prior to the protected activity*. Because Stevenson engaged in the protected activity on December 28, 2005, only employment actions that occurred after that time can be implicated by the retaliation provision of Title VII. Therefore, no causal link can be shown between Stevenson's filing of charges with the Equal Employment Opportunity Commission and the Louisiana Human Rights Commission, and her suspension, which occurred on April 28, 2005.

*Id.* at 555 (emphasis added).

To satisfy the causation prong, Huddleston "must either present 'direct evidence of retaliation' or 'circumstantial evidence creating a rebuttable presumption.'" *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (quoting *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003)). In the Court's view, Huddleston has not done either.

As indicated above, Huddleston specifically admitted in his deposition, as well as in his letter to the EEOC Investigator that he was informed that his pay would decrease in the future to match his demotion. There is also sworn testimony from Cantrell to support Cooper Tire's contention that Huddleston knew his pay would decrease six months after his demotion. The Court also points to Huddleston's affidavit, wherein he states, "on October 20, 2020, [Cooper Tire] demoted me to the position of belt reclaim in the Tire Assembly department, *although my pay would remain the same for a few months*." [47], Ex. 1 at p. 1 (emphasis added). Furthermore, Huddleston's demotion paperwork dated October 24, 2020 contains a note that states, "do not change his pay for 6 months, then change it to level 1." [42], Ex. 7 at p. 1.

It is clear that the decision to reduce Huddleston's pay was made *prior* to his filing of the first EEOC Charge, and it is likewise clear that Huddleston was made aware of that fact. And while Cooper Tire has pointed to specific summary judgment type evidence to support those facts, Huddleston has not provided anything to rebut it. Similar to the holdings in *Watkins* and *Stevenson*, this Court finds that Huddleston's retaliation claim must fail at the causation stage since the

9

decision to decrease his pay occurred before he engaged in the protected activity.

Therefore, Huddleston's retaliation claim based upon his pay decrease is hereby DISMISSED.

Huddleston's second claim is that he was retaliated against when he was not selected for a Lead position. For this argument, there is some dispute about when Huddleston actually engaged in a protected activity. On one hand, Huddleston argues that he engaged in a protected activity in January 2021 "by complaining that he was being discriminated against because of his looks[.]" [48] at p. 9. Specifically, Huddleston is referring to the comment he left on his self-evaluation form on January 14, 2021, which stated:

> Lastly, the way someone treat[s] you, and the things they do to you [] should never be determined by the way we look. There are no second class people anymore; we shoud [sic] all be treated 'equal', but more times we are not because of our 'looks'.

[47], Ex. 4 at p. 45.[7]

Huddleston contends that the only difference between him and the other Lead position candidates is that he is black and they are white. Therefore, under Huddleston's theory, it was reasonable that Cooper Tire knew he was making a race complaint. In his Response [52], Huddleston contends that Cooper Tire should have known he was making a race complaint because he had previously brought up the issue of race on October 23, 2020. On that date, Huddleston met with Cantrell and according to her meeting notes, "[Huddleston] came to [her] office and wanted to discuss his demotion…[He] asked was he demoted because of his race, age, or his heart attack. [She] assured him that none of those things were discussed or considered." [52], Ex. 1 at p. 1. Conversely, Cooper Tire contends that neither Huddleston's October 23, 2020 question nor his

---

[7] For context, the comment above was included at the bottom of his January evaluation sheet. Cooper Tire employees receive annual performance evaluations. Huddleston's evaluation included a review of his performance from January 2020 to January 2021.

10

comment on his January 14, 2021 self-evaluation form are considered protected activities.

Prior to addressing the merits of this claim, the Court feels compelled to address a procedural argument associated with it. Specifically, Cooper Tire asserts that Huddleston's failure to promote claim is barred because it was not included in his EEOC Charge. His second EEOC Charge only included an allegation that Cooper Tire retaliated against him *by reducing his pay* after filing his first EEOC Charge. The charge makes no reference whatsoever to the failure to promote claims for retaliation purposes. And for the sake of clarity, the Court also notes that, in his first EEOC Charge, Huddleston did not make any allegations as to retaliation whatsoever. The "retaliation" box was not even checked on that Charge. *See* [42], Ex. 11.

As Cooper Tire points out, the Fifth Circuit has held that an EEOC charge must include the incidents alleged in the complaint. *O'Neal v. Roadway Exp.*, 181 F. App'x 417, 419 (5th Cir. 2006). There, "[the plaintiff] never filed an EEOC Charge regarding the incidents alleged in the district court complaint dating prior to the incidents alleged in the EEOC Charge. Therefore, they were not ripe for review by the district court." *Id*; *see also Brooks v. Lubbock Cnty. Hosp. Dist.*, 2008 WL 11422111, at *1 (N.D. Tex. Dec. 11, 2008) (citing *O'Neal*, 181 F. App'x at 419) (noting that courts should not consider incidents that occurred prior to those alleged in the EEOC Charge because those incidents are not ripe for review). Conversely, the Fifth Circuit has also held that if the allegations in the complaint are similar to those contained in the EEOC Charge, then a defendant is considered to be on notice of the allegations even if they were not specifically stated in the complaint. *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 448 (5th Cir. 1983).

Here, while Huddleston's Complaint [1] includes an allegation that he was retaliated against when he was not promoted to a Lead position, his second EEOC Charge alleges only that *"[he] believes [Cooper Tire] is reducing his pay* because [he] complained about race, age, and

11

disability discrimination and because he filed an EEOC charge of discrimination." [1], Ex. 1 (emphasis added). Nothing in his second EEOC Charge pertains to the failure to promote him to the Lead positions in October 2020 or January 2021. And although his first EEOC Charge references Cooper Tire's decision not to promote him, that Charge did not state anything about engaging in a protected activity, did not use the word "retaliation" or any similar words, and the "Retaliation" box on the Charge was not selected.

In light of these facts, the Court finds that the allegations of Huddleston's Complaint [1] go beyond the scope of his EEOC Charge. The Court simply cannot find that Huddleston's EEOC Charges put Cooper Tire on notice that he intended to pursue a retaliation claim based upon the decisions not to promote him to the Lead positions in October 2020 or January 2021.[8]

Additionally, even if Huddleston's failure to promote claim was not barred, his claims would still fail because there is no causal connection between the protected activity and adverse employment action. As noted above, Huddleston contends that he engaged in a protected activity on January 14, 2021 when he left the following comment on his annual self-evaluation form: "[t]he way someone treat[s] you, and the things they do to you [] should never be determined by the way we look. There are no second class people anymore; we shoud [sic] all be treated 'equal', but more times we are not because of our 'looks[.]'" [45], Ex. 4. at p. 45. To support his contention that this was a protected activity, Huddleston points out that the only difference between him and the other

---

[8] The Court notes that Cooper Tire makes an alternative argument, that even if Huddleston had included his failure to promote allegation within his second EEOC Charge, both the October 2020 and January 2021 promotion incidents occurred more than 180 days before Huddleston filed his second EEOC Charge on July 22, 2021. This Court has held that any purported claims that occurred more than 180 days prior to the filing of the EEOC Charge are time-barred. *Equal Emp. Opportunity Comm'n v. USF Holland, LLC*, 2021 WL 4497490, at *1 (N.D. Miss. Sept. 30, 2021). Therefore, in the event the Court found that Huddleston's failure to promote claim was not barred for not being included in his EEOC Charge, the claim still would have been time-barred under the ruling from *USF Holland* because the promotion incidences happened in October 2020 and January 2021, which are both more than 180 days prior to July 22, 2021—the day Huddleston filed his second EEOC Charge.

Lead position candidates is that he is black and they are white. Cooper Tire contends that this was not a protected activity. In the Court's view, it is at least arguable that he was complaining about race discrimination.

Assuming, without deciding, that Huddleston's comment constituted a protected activity, the claim still fails at the causation stage. As indicated above, adverse employment actions that predate the protected activity cannot be relied upon to state a viable retaliation claim. *See Watkins*, 269 F. App'x at 462; *Stevenson*, 547 F. Supp. 2d at 555. Here, Huddleston applied for the first Lead position in October 2020—well prior to leaving the comment on January 14, 2021. Huddleston contends that he applied for the second Lead position sometime in January 2021, but he provides no further evidence to support the *specific* date. On the other hand, Cooper Tire submitted Cantrell's affidavit, wherein she testified that he applied for the position sometime between January 6, 2021 and January 13, 2021. As mentioned above, Cantrell's personal notes indicate that the decision not to select Huddleston for the second position had already been made as of January 6, 2021.

Thus, the decision not to promote Huddleston occurred *prior* to him leaving the comment about race on his self-evaluation form on January 14, 2021. Therefore, as a matter of law, Huddleston's retaliation claim based upon the failure to promote him must fail. That claim is hereby DISMISSED.[9]

---

[9] In reaching this conclusion, the Court feels compelled to address a couple of points. First, the Court notes that, in addition to the January 14, 2021 comment, Huddleston made reference to a previous question he asked in October 2020 when he inquired of Cantrell whether his race played a role in his demotion. However, Huddleston has provided no argument that that question alone constituted a protected activity. Second, the Court notes that the timeline is unclear as to when Cooper Tire made the decision as to his second failed attempt at a promotion. However, the evidence relied upon above pinpointed it to some point prior to January 14, 2021 (the date of Huddleston's comment) and was provided to the Court by Cooper Tire in the form of competent summary judgment evidence. Huddleston failed to rebut that position in the form of *evidence*. He alleged in his response Memorandum [48] that Jared Sparks was selected for the position in February 2021, but he provides no evidence to support that contention—nor does he provide

*Conclusion*

For the reasons set forth above, Cooper Tire's Motion for Summary Judgment [42] is GRANTED. The claims set forth in Huddleston's Complaint [1] are DISMISSED *with prejudice*. A final judgment will issue this day. This CASE is CLOSED.

SO ORDERED, this the 27th day of July, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

anything to rebut Cooper Tire's position that Huddleston was not selected for an interview *prior* to January 14, 2021. And the Court "has no duty to survey the entire record in search of evidence to support a non-movant's position." *Head v. Smith*, 2021 WL 4168390, at 2* (E.D. La. Sept. 2021) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334 (5th Cir. 1996)). Finally, the Court also notes that, in his Complaint [1], Huddleston alleges that he applied for the second Lead position in February 2022. However, in his affidavit, Huddleston provides sworn testimony that he applied for the second Lead position in January 2021. *See* [47], Ex. 1 at p. 4. The allegation in Huddleston's Complaint [1] therefore appears to be a typographical error with the month and date in which he applied for the second Lead position.

14