IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FREDERICK HUDDLESTON                                                                    PLAINTIFF

v.                                                                     CAUSE NO: 1:22-CV-48-SA-RP

COOPER TIRE & RUBBER
COMPANY                                                                                 DEFENDANT

ORDER AND MEMORANDUM OPINION

On July 27, 2023, the Court entered an Order and Memorandum Opinion [70] granting Cooper Tire's request for summary judgment and dismissing all of Huddleston's claims. On August 24, 2023, Huddleston filed a Motion for Reconsideration [72], wherein he requests that the Court revisit certain portions of its ruling. The Motion [72] has been fully briefed and is now ripe for review.

*Applicable Standard*

"A motion asking the court to reconsider a prior ruling is evaluated either as a motion. . . under Rule 59(e) or. . . under Rule 60(b). The rule under which the motion is considered is based on when the motion is filed. If the motion is filed within twenty-eight days after the entry of judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60." *Holmes v. Day*, 2019 WL 13233661, at *1 (S.D. Miss. Nov. 27, 2019) (citing *Demahy v. Schwarz Pharma, Inc*. 702 F.3d 177, 182 n. 2 (5th Cir. 2012)).[1]

"A Rule 59(e) motion 'calls into question the correctness of judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). The Fifth Circuit has held that "[s]uch a motion is not the proper vehicle

---

[1] Because Huddleston filed his Motion [72] within twenty-eight days, Rule 59(e) is applicable.

for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "The federal courts of [Mississippi] recognize three potential grounds for the Court to alter or amend a judgment under Rule 59(e): '(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, (3) the need to correct a clear error of law or prevent manifest injustice.'" *A.T. ex rel. Givens v. Leflore Cnty. Sch. Dist.*, 2010 WL 1924436, at *2 (N.D. Miss. May 11, 2010) (citing *Williamson Pounders Architects, P.C. v. Tunica Cnty., Miss.*, 2008 WL 2856826, at *1 (N.D. Miss. July 21, 2008)) (additional citations omitted). Importantly, "reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 478 (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

*Relevant Background*

In its previous ruling, the Court set forth the underlying facts leading up to this litigation. Although the Court need not recite the entire factual basis at the outset, an explanation of the claims asserted—and the Court's disposition of them—is appropriate.

Prior to filing suit, Huddleston filed two separate EEOC Charges against Cooper Tire. In the first Charge, which he filed on February 22, 2021, Huddleston alleged race, age, and disability discrimination in connection with his October 20, 2020 demotion and subsequently being passed over for two promotions for which he applied. Huddleston filed his second Charge on July 22, 2021 and alleged that his pay was reduced in retaliation for his filing of his first Charge.

In his Complaint [1], Huddleston asserted retaliation claims pursuant to Title VII, Section 1981, the ADA, and the ADEA.[2] Broadly speaking, his claims fell into two categories: (1) the

---
[2] The Court will address the Section 1981 claims more fully hereinafter.

2

decrease in his pay (which he alleged was in retaliation for his filing of the first Charge); and (2) the failure to promote him in late October 2020 and in January 2021 (which he alleged was in retaliation for his engaging in two different protected activities in the workplace). The Court ultimately granted summary judgment in Cooper Tire's favor.

As to the decrease in pay claim, the Court held that it failed as a matter of law because the summary judgment evidence showed that, although Huddleston's pay was not decreased until after he filed the first EEOC Charge, the *decision* to decrease his pay was made *prior to* the filing of the Charge. The Court therefore held that the claim failed at the causation stage.

As to the failure to promote claims, the Court held that Huddleston's claims were procedurally barred for failure to exhaust administrative remedies. In reaching that conclusion, the Court noted that Huddleston's first EEOC Charge included no allegations of retaliation whatsoever and further noted that although his second EEOC Charge did allege retaliation, it only did so in connection with the pay reduction—not the failure to promote. Therefore, the Court held that the failure to promote claims were not exhausted.

Although dismissing the failure to promote claims on that procedural ground, the Court also discussed the merits of the claims. For context, Huddleston took the position that he engaged in a protected activity on January 14, 2021 when he left the following comment on his annual self-evaluation form: "the way someone treat[s] you, and the things they do to you [] should never be determined by the way we look. There are no second class people anymore; we shoud [sic] all be treated 'equal', but more times we are not because of our 'looks[.]'" [70] at p. 12. As to the October 2020 failure to promote, the Court held that Cooper Tire's decision to not select him for the Lead position was not retaliatory because the decision pre-dated the alleged protected activity.[3]

---

[3] In reaching this conclusion, the Court explained that "in addition to the January 14, 2021 comment, Huddleston made reference to a previous question he asked in October 2020 when he inquired of Cantrell

3

Regarding the January 2021 failure to promote, the Court again held that Cooper Tire's decision pre-dated the protected activity: "the decision not to promote Huddleston occurred *prior* to him leaving the comment about race on his self-evaluation form on January 14, 2021." [70] at p. 13 (emphasis in original).

Now, Huddleston asks the Court to reconsider certain aspects of the ruling. First, he notes that the Court did not address his Section 1981 claims whatsoever. And although the analytical framework for retaliation claims under Section 1981 mirrors those of retaliation claims under Title VII, the ADA, and the ADEA, there is no exhaustion requirement under Section 1981; therefore, the Court's conclusion as to the failure to exhaust would not bar him from proceeding on the retaliation claims under Section 1981. Further, he contends that the Court erred as to the merits of his January 2021 failure to promote claim by improperly relying upon certain portions of evidence submitted by Cooper Tire that were contradicted by other evidence in the record. He therefore asks the Court to "deny Defendant's Motion for Summary Judgment as to Plaintiff's 42 U.S.C. § 1981 retaliation claim involving his lack of promotion in January 2021." [73] at p. 4. Cooper Tire opposes Huddleston's request.

*Analysis and Discussion*

The Court begins with Huddleston's argument that his Complaint [1] asserted his retaliation claims under Section 1981 and that the Court's Order and Memorandum Opinion [70] failed to address those claims. In short, Huddleston's argument is correct. The question then becomes the impact, if any, that the initial failure to address the Section 1981 claims has on the Court's ruling.

---

whether his race played a role in his demotion." [70] at p. 13 n. 9. However, the Court specifically held that "Huddleston has provided no argument that that question *alone* constituted a protected activity." *Id* (emphasis added). The Court therefore did not address it any further.

4

As previously noted, the analytical framework associated with Section 1981 retaliation claims mirrors the framework applicable to retaliation claims under Title VII, the ADA, and the ADEA. *See*, *e.g.*, *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 436-37 (5th Cir. 2022) ("To establish a claim of retaliation *under Title VII or Section 1981*, a plaintiff must prove by a preponderance of the evidence that: (i) he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action.") (emphasis added; citation omitted); *see also Feist v. Lousiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

The Court will address Huddleston's claims in turn.

I. *Pay Reduction*

As indicated above, the Court's ruling on Huddleston's pay reduction claim was based upon his failure to come forward with any summary judgment type evidence to rebut Cooper Tire's position that the *decision* to reduce his pay predated his engagement in a protected activity. The Court recognized that the pay reduction itself did not go into effect until after Huddleston engaged in the protected activity but nevertheless, citing several pieces of summary judgment type evidence, concluded that the claim should be dismissed.

The outcome is the same under Section 1981. In fact, Huddleston has raised no argument that the Court should reconsider its holding as to this claim. For the same reasons articulated in the previous Order and Memorandum Opinion [70], Huddleston's pay reduction claim pursuant to Section 1981 is DISMISSED.

II. *October 2020 Failure to Promote*

The Court concluded that Huddleston's October 2020 failure to promote claim was procedurally deficient because he failed to properly exhaust administrative remedies pertaining to

5

that claim. Also, the Court addressed the claim on the merits and concluded that it failed in that respect.

The Court's conclusion as to the lack of administrative exhaustion is inapplicable to the Section 1981 claim. *See, e.g.*, *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 420 (E.D. La. 2016) (citing *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015); *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005)) ("Section 1981 claims are governed by the same standards as Title VII, except that Section 1981 does *not* require exhaustion of administrative remedies.") (emphasis in original). In other words, the failure to exhaust administrative remedies does not preclude Huddleston from proceeding on his Section 1981 claim for failure to promote.

However, in its previous ruling, the Court also addressed the claim on its merits. In particular, the Court noted that the claim failed because the alleged adverse employment action (the failure to promote Huddleston in October 2020) occurred *before* his alleged protected activity (writing the comment on the self-evaluation form on January 14, 2021). The Court acknowledged that Huddleston alleged that he made a reference to race when he asked Cantrell whether the decision to demote him was because of race. In his initial summary judgment briefing, Huddleston stated that he "had already brought the issue of race up to Defendant back in October [2020]." [48] at p. 9. But in the Order and Memorandum Opinion [70], the Court explained that "Huddleston has provided no argument that that question alone constituted a protected activity." [70] at p. 13 n. 9.

Nothing in Huddleston's present filings asks the Court to reconsider that ruling. In fact, that claim is not addressed whatsoever in Huddleston's current filings. Therefore, the Court need not address it any further. For the merits-based reasons articulated in the Court's previous Order and Memorandum Opinion [70], Huddleston's October 2020 failure to promote claim pursuant to

6

Section 1981 is DISMISSED.

### III. January 2021 Failure to Promote

As with the October 2020 failure to promote claim, the Court concluded that Huddleston failed to exhaust administrative remedies in connection with the January 2021 failure to promote claim. But as addressed above, that procedural failure does not bar his Section 1981 claim. *See Jones*, 427 F.3d at 992. The Court will therefore turn to the merits.

A further explanation of the Court's initial ruling is warranted. In sum, the Court's conclusion was that Huddleston's alleged protected activity—writing the race-based comment on his self-evaluation form—occurred *after* Cooper Tire made the decision not to promote Huddleston. Therefore, the Court held that the claim—like his October 2020 failure to promote claim—failed at the causation stage. Huddleston's current contention is rather straightforward—the Court relied on improper and/or contradictory evidence in concluding that the decision not to promote Huddleston occurred prior to his alleged protected activity.

The timeline is critical. It is undisputed that Huddleston left the race-based comment on his self-evaluation form on January 14, 2021. There is a disagreement between the parties as to the date of Cooper Tire's decision. In its Order and Memorandum Opinion [70], the Court noted that "Huddleston contends that he applied for the second Lead position sometime in January 2021, but he provides no further evidence to support the specific date. On the other hand, Cooper Tire submitted Cantrell's affidavit, wherein she testified that he applied for the position sometime between January 6, 2021 and January 13, 2021. As mentioned above, Cantrell's personal notes indicate that the decision not to select Huddleston for the second position had already been made as of January 6, 2021." [70] at p. 13. The Court also included a further explanation of the timeline in a footnote:

> [T]he Court notes that the timeline is unclear as to when Cooper Tire made the decision as to his second failed attempt at a promotion. However, the evidence relied upon above pinpointed it to some point prior to January 14, 2021 (the date of Huddleston's comment) and was provided to the Court by Cooper Tire in the form of competent summary judgment evidence. Huddleston failed to rebut that position in the form of *evidence*. He alleged in his response Memorandum [48] that Jared Sparks was selected for the position in February 2021, but he provided no evidence to support that contention—nor does he provide anything to rebut Cooper Tire's position that Huddleston was not selected for an interview prior to January 14, 2021. . . Finally, the Court also notes that, in his Complaint [1], Huddleston alleges that he applied for the second Lead position in January 2021. The allegation in Huddleston's Complaint [1] therefore appears to be a typographical error with the month and date in which he applied for the second Lead position.

[70] at p. 13-14 n. 9 (emphasis in original; citations omitted).

In his present filing, Huddleston takes issue with the Court's reliance on Cantrell's notes and deposition in its piecing together of the timeline:

> 10. The personnel notes of Ms. Cantrell that the Court relied upon are problematic for numerous reasons.
>
> 11. The first is it is very clear that the entry was not created on January 6, 2021. The note on that day claims Ms. Cantrell (1) posted and closed the job opening, (2) received applications from nine candidates, (3) decided Mr. Huddleston would not receive an interview, (4) ranked all the candidates to come to a decision on interviewing five candidates[,] (5) selected a panel of interviewers and (6) interviewed all five candidates all on January 6, 2021. This is just unbelievable on its face, but it also contradicts Ms. Cantrell's own sworn testimony. Based on the Court's interpretation of this unsworn backdated note Ms. Cantrell likely means Ms. Cantrell's sworn testimony is not true and Mr. Huddleston submitted his application prior to January 6.
>
> 12. This conclusion by the Court is contrary to the requirements of Rule 56 of the Rules of Civil Procedure as there is a genuine issue of material fact as to when Ms. Cantrell made the decision not to interview Mr. Huddleston.

[73] at p. 2-3.

Recognizing Huddleston's position, the Court finds the most appropriate manner in which to resolve the issue is to walk through the entire *McDonnell Douglas* analysis—giving particular attention to the evidence on which the Court relied in reaching its conclusion. *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (noting that retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework).

As the plaintiff, Huddleston bears the initial burden to show a prima facie case of retaliation. "To establish a prima facie case of retaliation, [the plaintiff] must show that: 1) [he] engaged in a protected activity; 2) [he] suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (citing *Saketoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022)). "If a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying employment actions. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)).

A.  Prima Facie Case

To carry his prima facie burden, Huddleston must establish that he engaged in a protected activity, that he suffered an adverse employment action, and that there is a causal link between the two. *Wantou*, 23 F.4th at 436-37.

As to the protected activity element, Huddleston contends that he "engaged in [a] protected activity in January 2021, by complaining that he was being discriminated against because of his looks." [48] at p. 9. In its original briefing, Cooper Tire took the position that this comment did not constitute a protected activity because Huddleston "did not complain about a characteristic

9

protected under the statutes he brings forth retaliation claims under." [43] at p. 10.

As relevant here, an employee has engaged in a protected activity if he has "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Notably, "[m]agic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Cochran v. Tri-State Truck Ctr., Inc.*, 2014 WL 654634, at *2 (S.D. Miss. Feb. 19, 2014) (quoting *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)). "[T]he Fifth Circuit has 'consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.'" *Id.* (quoting *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011)) (additional citation omitted).

Huddleston's specific comment that he left on his annual self-evaluation form on January 14, 2021 was: "the way someone treat[s] you, and the things they do to you - should never be determined by the way we look. There are no second-class people anymore; we shoud [sic] all be treated 'equal', but more times we are not because of our 'looks.'" [52], Ex. 3 at p. 2. The Court notes that Huddleston referred to "looks" and did not specifically state "race." However, the comment was not, in the Court's view, vague. This is particularly true when considered in conjunction with the preceding section of his self-evaluation. In that section, Huddleston responded to the question "to what job does employee aspire" as follows: "the job that was taken away from me 'unfairly.'" *Id*. Additionally, Huddleston commented that he was afraid to take advantage of any special training "because of the bias and unfair treatment that goes on." *Id*. Taking all of this into account, the Court cannot accept Cooper Tire's contention that the Court should dismiss the claim because Huddleston used the word "looks" instead of "race." As noted above, "magic words are not required." *Cochran*, 2014 WL 654634 at *2 (citation omitted). These

comments in their totality were sufficient to "at least alert [Cooper Tire] to the employee's reasonable belief that unlawful discrimination is at issue." *Id*.

Huddleston can satisfy the second prima facie element because he was not selected for the promotion for which he applied. *See*, *e.g.*, *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

For the last prima facie element, Huddleston must establish a causal link between his protected activity and the failure to promote. *See Wantou*, 23 F.4th at 436-37. In its previous ruling, the Court held that Huddleston's claim failed here. Specifically, the Court concluded that the adverse employment action (not being selected for an interview, leading to him not being selected for the position) occurred prior to Huddleston engaging in a protected activity (leaving the comment on his self-evaluation form). *See Stevenson v. Williamson*, 547 F. Supp. 2d 544, 555 (M.D. La. 2008) (holding that "no causal link can exist where . . . a claimed adverse employment action occurred prior to the protected activity."). In reaching this conclusion, the Court relied on Cantrell's affidavit wherein she testified that "sometime between January 6, 2021 and January 13, 2021, Huddleston among others applied for the D crew Leader position." [42], Ex. 8 at p. 1. The Court also relied on Cantrell's notes which stated that the decision not to select Huddleston for the second position had already been made as of January 6, 2021. Ultimately, although explicitly acknowledging that it was unclear exactly when Cooper Tire made the decision not to interview Huddleston for the second lead position, the Court, based on the evidence outlined above, concluded that the decision not to promote Huddleston occurred prior to him leaving the comment on his self-evaluation form on January 14, 2021.

At Huddleston's request, the Court has carefully reviewed the evidence on which it relied

11

in reaching its conclusion. Of critical importance in this analysis is Cantrell's affidavit, wherein she specifically testified that "[s]ometime between January 6, 2021 and January 13, 2021, Huddleston, among others, *applied* for the D Crew Leader position." [42], Ex. 8 at p. 1 (emphasis added). Notably, while the affidavit *does* indicate when Huddleston and others applied for the position (sometime between January 6, 2021 and January 13, 2021), it does *not* indicate when the decision was made not to select Huddleston for an interview. This distinction is critical as it is possible that the decision not to interview Huddleston was made *after* he engaged in a protected activity. Additionally noteworthy is the fact that Cantrell's personal notes indicate that the decision not to interview Huddleston was already made on January 6, 2021. This note, while unsworn, is (at least plausibly) contradictory to Cantrell's own affidavit. Ultimately, the Court accepts Huddleston's argument for reconsideration on this point. A question of fact exists as to whether the decision to not interview Huddleston was made before or after he engaged in a protected activity.

Although, as indicated above, the timeline is not clear, it is clear that Huddleston was not interviewed for the position. Jared Sparks, a White male, was ultimately selected for the position following an interview process that played out in January 2021.[4]

"At the prima facie stage, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)); *see also Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) ("An interval of weeks between [the plaintiff's] complaints and her termination is certainly close timing, so we agree with the district court and hold that [the plaintiff]

---

[4] In her deposition, Cantrell testified that the interviews occurred in January 2021. *See* [47], Ex. 7 at p. 16.

12

has established a prima facie case."). The Court finds that Huddleston has carried his prima facie burden.

### B. Legitimate, Non-Discriminatory Reason

Next, the burden shifts to Cooper Tire to show that it had a legitimate, non-retaliatory reason for not selecting Huddleston for the position. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). Cooper Tire articulates that it did not even select Huddleston to interview for that position because the company "maintains a custom that if an employee reapplies for a position that they interviewed for less than six months ago, [Cooper Tire] may not reinterview the candidate." [43] at p. 4. This is sufficient for Cooper Tire to carry its burden at this stage of the proceedings.

### C. Pretext

Finally, the burden shifts back to Huddleston to show pretext. *Aldrup*, 274 F.3d at 286. "In order to avoid summary judgment, [Huddleston] must show 'a conflict in substantial evidence' on the question whether the employer would not have taken the action 'but for' the protected activity." *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 333 (5th Cir. 2014) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

At the outset of this analysis, the Court notes that Cooper Tire's legitimate, nonretaliatory reason as it pertains to the January 2021 failure to promote claim (at issue now) relates in some way to its reasons for not promoting Huddleston when he first applied for a promotion in October 2020. Cooper Tire contends that Huddleston was not promoted in October 2020 "[b]ased on his interview and work history[.]" [43] at p. 3. Then, Huddleston was not selected to interview (and therefore did not receive the promotion) in January 2021 because of Cooper Tire's custom to not reinterview within six months. Although Cooper Tire may ultimately take the position that Huddleston's prior interview and work history played some role in its decision, Cooper Tire's

13

Memorandum [43] explicitly states that "Huddleston was not selected to interview. Cooper Tire maintains a custom that if an employee reapplies for a position that they interviewed for less than six months ago, they may not reinterview the candidate." [43] at p. 4. With this caveat, the Court will analyze the claim.

In doing so, the Court first notes Cooper Tire's explanation as to the interview custom. Cooper Tire relies on Cantrell's deposition, wherein she testified:

> Q. And as well, putting Mr. Huddleston below the break, that was a decision that you made?
>
> A. Well, that was a custom of what we had been doing. He had interviewed and put in for the same job, applied for the same job that he had just interviewed for. *It was less than six months*. And he was just also, you know, stepped down from that job. . .
>
> . . .
>
> Q. Is there a custom at Cooper Tire that if an employee interviews for one position and then they don't get it and in between six months later they ask to apply for another -- they apply for another position, are they -- is it required that they get a interview for that position since they already interviewed for it six months previously?
>
> A. Right. *Six months is our cutoff, and that's custom*.

[47], Ex. 7 at p. 30, 34 (emphasis added).

On the other hand, Huddleston contends that Cooper Tire's alleged interview custom does not actually exist and is therefore not the reason he was not selected for the January 2021 position. In his affidavit, Huddleston provides sworn testimony that Brandon Stewart, a White employee, applied for the same October 2020 and January 2021 positions that Huddleston applied for. However, according to Huddleston, Stewart was interviewed *both* times. Notably, Cooper Tire's

14

own documentation lists Stewart as an interviewee for both the October 2020 and January 2021 positions. *See* [47], Ex. 5, 6.

Additionally, the Court notes that Paul Park, one of Huddleston's supervisors who served on both interview panels, testified that he was unaware of any such custom:

> Q. So previously Ms. Cantrell talked about a custom and essentially the custom is if someone applies to a job and they interview and they don't receive that job within a six-month time span if they apply for that same job it's not required that they be interviewed. Would you have reason to know of this custom or policy?
>
> A. No.
>
> Q. Well, who would have knowledge of that custom or policy? Who would that fall under?
>
> A. Our HR Department.
>
> Q. So as far as interviews essentially you just show up to interview. You don't have anything to do with who gets picked for an interview or anything like that; correct?
>
> A. Correct.

[47], Ex. 3 at p. 29-30.

Although cognizant that Park testified that his role in the process was simply to participate in the interviews—not take part in the selection of interviewees—the Court nevertheless finds noteworthy his complete lack of knowledge of the alleged interview custom. However, the Court finds particularly pertinent Huddleston's testimony—and Cooper Tire's corroborating documentation—that the custom was not applied to Stewart—a White employee. In the Court's view, this is significant as to the pretext analysis. *See, e.g., Martin v. Waring Invs., Inc.*, 2008 WL 2312728, at *4 (S.D. Miss. May 30, 2008) (citing *Machinick v. PB Power, Inc.*, 398 F.3d 345, 354-

55 (5th Cir. 2005)) ("[C]ertainly an employer's deviation from its written or unwritten policies and practices may raise an inference of pretext.").

The Court finds critical these significant discrepancies as to the existence of an interview custom and, if it existed, its selective enforcement. This is particularly so in light of the very close proximity between the protected activity and the failure to interview and subsequent failure to promote him. *See*, *e.g.*, *January v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023) ("While temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason, . . . the combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment[.]") (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)) (internal quotation marks omitted).

Ultimately, the Court finds that questions of fact remain as to this claim—a reasonable jury *could* infer that had Huddleston not engaged in the protected activity he would have been permitted to interview for and potentially receive the January 2021 promotion. The Court relies on the differential treatment of another White employee, in addition to the very close temporary proximity, to reach this conclusion. Huddleston will be permitted to proceed to trial on his Section 1981 retaliation claim based on the January 2021 failure to promote.

*Conclusion*

For the reasons set forth above, Huddleston's Motion for Reconsideration [72] is GRANTED. Huddleston will be permitted to proceed to trial on his Section 1981 retaliation claim based on the failure to promote him in January 2021. His other Section 1981 retaliation claims are dismissed *with prejudice*. The Clerk of the Court is directed to REOPEN this case. A trial date will be set by a separate Notice once the case is reopened.

SO ORDERED, this the 27th day of March, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE