IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**FREDERICK HUDDLESTON**  **PLAINTIFF**

**v.**  **CIVIL ACTION NO.: 1:22-cv-048-SA-RP**

**COOPER TIRE & RUBBER**  **DEFENDANT**
**COMPANY**

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION

### INTRODUCTION

Defendant's Motion for Reconsideration is simply one that raises arguments in which Defendant has already presented in its Summary Judgment Motion. Defendant contends that this Court's reliance on *Cochran* led to the incorrect conclusion that Plaintiff's complaint on a performance self-evaluation that treatment should not be based on "looks" is sufficient to constitute a protected activity. *Cochran v. Tri-State Truck Ctr., Inc.*, No.3:12-CV-857 DPJ-FKB, 2014 WL 654634, at *1 (S.D. Miss. Feb. 19, 2014); [Doc. 80].

In establishing such position, however, in both its Motion for Summary Judgment [Doc. 43] and its Motion for Reconsideration of Order Granting Plaintiff's Motion for Reconsideration [Doc. 80], Defendant does not elaborate as to what they interpreted Plaintiff's complaint about his "looks" to mean if they did not think it meant that he was complaining about his race. Considering that there is no evidence indicating Plaintiff had any sort of physical defects or disabilities to allow a reasonable person to think a complaint about not receiving a promotion because of the way he looked meant

1

anything else other than a reference to Plainitff's skin color. Simply put, Defendant contends that Plaintiff's complaint about being treated unfairly while employed at the company and contributed such unfair treatment because of his "looks" is not sufficient to put the employer on notice that Plaintiff was complaining about his race. Such ignorance should not be permissible on fact alone to allow Defendant to receive final judgment on the merits.

In sum, Defendant's Motion, if anything, just rehashes the question that whether Plaintiff's opposition to being treated differently because of his looks while employed with Defendant is sufficient to constitute a protected activity necessary to establish *prima facie* claim for retaliation under 42 U.S.C. §1981. Because Defendant's contentions dispute those of Plaintiff, such issue presents a genuine issue of material fact before this Court. As such, because such question is not so one-sided to where a final judgment on the merits would be proper on this issue, Defendant's frivolous Motion to Reconsider such issue must be denied.

Though Defendant is entitled to disagree with the Court, Defendant should not be entitled to monopolize the time and resources of Plaintiff and the Court, disrupt the disposition of this case, and subject Plaintiff to unnecessary litigation costs by filing such frivolous motions in bad faith, especially on issues where there is a clear genuine issue of material fact. Ultimately, because Defendant's self-serving motion simply hashes out an argument they already half-heartedly raised in their Motion for Summary Judgment, notably without providing any alternative reasoning as to what they interpreted Plaintiff's complaint about being mistreated for the way he "looks" to have meant from their perspective, such motion must be denied to prevent manifest injustice.

**RULE 59(e) STANDARD OF REVIEW**

Courts view "[r]econsideration of a judgment after its entry" as "an extraordinary remedy that should be used sparingly." *Templett v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A Rule 59(e) motion to alter a judgment should only be granted if it "establish[es] either a manifest error of law or fact or . . . present[s] newly discovered evidence." *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Such a motion, however "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Id.*

A party filing a Rule 59(e) motion is "call[ing] into question the correctness of a judgment." *Templet*, 367 F.3d at 478. The Fifth Circuit has held that this type of motion, however, "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 478-79. Instead, the Rule "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. at 479. Furthermore, arguments "not raised in response to the [original] motions for summary judgment . . . [can]not be raised for the first time in a Rule 59(e) motion*." Brown v. Illinois Cent. Rd. Co., Inc.*, 2010 WL 11530401, *2 (S.D. Miss. Mar. 10, 2010).

Ultimately, the Federal Courts of Mississippi "recognize three potential grounds for the Court to alter or amend a judgment under Rule 59(e): '(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, (3) the need to correct a clear error of law or prevent manifest injustice.'" *A.T. ex rel. Givens v. Leflore Cnty. Sch. Dist.*, 2010 WL 1924436, at *2 (N.D. Miss. May 11, 2010) (citing

3

*Williamson Pounders Architects, P.C. v. Tunica Cnty., Miss.*, 2008 WL 2856826, at *1 (N.D. Miss. July 21, 2008)) (additional citations omitted).

## ANALYSIS

Defendant's motion is premised on the need to correct a clear error of law. [Doc. 80 at 629]. Ultimately, before filing a Rule 59(e) motion, Mississippi Courts have cautioned that parties "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement" with the Court. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.F. 625, 626 (S.D. Miss. 1990).

### I. **Defendant has not satisfied their burden for proper reconsideration under F.R.C.P. 59 (e)**

Defendant argues that the Court's finding that Plaintiff engaged in a protected activity—which was commenting on a performance evaluation that "the way someone treat[s] you, and the things they do to you – should never be determined by the way we look. There are no second-class people anymore; we should [sic] all be treated 'equal', but more times we are not because of our 'looks'"-- is a clear error of law. [Doc. 80 at p. 629; Doc. 52, ex. 3 at p. 2]. In short, Defendant contends that this Court made a clear error of law in determining that Plaintiff engaged in a protected activity when he did not meet Defendant's subjective interpretation of such requirement.

Such argument lies at the heart of Plaintiff's first element of his §1981 retaliation claim. Nonetheless, it is worth mentioning that Defendant's motion to reconsider such issue brings forth arguments it should have raised in its Summary Judgment Motion but failed to do so. As such, because such arguments could have been raised and elaborated upon in its initial Motion for Summary Judgment, or its Response to Plaintiff's

4

Response in Opposition to Defendant's Motion for Summary Judgment, such motion is improper under Rule 59 (e) of the Federal Rules of Civil Procedure.

Nonetheless, in taking such position, Defendant distortedly distinguishes case law in which Courts have held that certain complaints made by employees in the form of the opposition clause were insufficient to show they have engaged in a protected activity because such complaints did not elaborate on the fact that they received such treatment on the basis of a protected class. Under Title VII, and also §1981, it is clear that an employee has engaged in protected activity if they have opposed any unlawful practice by Defendant. *See* 42 U.S.C. §2000e--3(a). To satisfy this opposition requirement, Plaintiff need only show that they had a "reasonable belief that the employer was engaged in unlawful employment practices." *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000). In other words, "magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010).

However, Plaintiff's case can be distinguished from such case law Defendant contends this Court incorrectly relied upon to grant Plaintiff's original Motion to Reconsider his §1981 retaliation claim because he alluded to the mistreatment he faced was because of his "looks," but such was not a reasonable complaint to put Defendant, or a reasonable person, on notice that Plaintiff was referring to being mistreated because of his race. Simply put, Huddleston complained that he suffered from unequal treatment at the hands of his employer and speculated that such treatment was a result of Defendant's discriminatory animus. Conversely, no Plaintiff in *Cochran, Brown, or*

5

*Davis,* which is all case law used by Defendant, mentioned that they faced such unlawful treatment by their employer on the basis of their race, color, sex, religion, or national origin. *See also Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485 (5th Cir. 2011); [Doc. 80 at p. 634]. In fact, not one of them made any direct statements alleging that discriminatory treatment was because they were a member of a protected class. Nonetheless, Defendant ultimately summarizes that because Plaintiff did not specifically mention the term race, and that because he only mentioned that he faced unequal treatment because of his "looks," he did not engage in protected activity. [Doc. 80 at p. 629]. If this Court were to agree with such contention, it would go against the very context, purpose, and language used in 42 U.S.C. §1981.

Such contentions made by Defendant are extremely alarming for a plethora of reasons. First, it is worth mentioning that 42 U.S.C. §1981 in and of itself does not even mention the term race when addressing equal rights under the law.[1] Looking at this language, and when comparing it to the complaint made by Plaintiff in his performance evaluation, it would be incredibly ignorant of Defendant to contend that a complaint about unequal treatment based on his looks would not be sufficient to put his employer on notice that they were engaging in unlawful activity protected by 42 U.S.C. §1981.

Furthermore, in *Saint Francis College v. Al-Khazraji*, the Supreme Court construed the term "race" as used in the §1981 context to include ancestry and ethnic characteristics. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Most notably, though §1981 itself does not use the term "race," the caselaw interpreting the

---

[1] Section 1981(a) provides, in relevant part, that: "All persons within the jurisdiction of the United States shall have the same right… to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens." See 42 U.S.C. §1981 (2006).

6

statute considers issues of race, color, ancestry and ethnic characteristics to have statutory protection. Furthermore, the Supreme Court explained that such expansive definition was consistent with the generally accepted understanding of the term "race" at the time of §1981's enactment. *Id.* at 609-13.[2] In similar fashion, it is important that this Court also recognizes that "race" does not have to be explicitly mentioned to describe unequal treatment as long as Defendant is notified that the complaint is made on the basis of some sort of protected characteristic, i.e., Plaintiff's looks.

Second, Defendant's argument is extremely problematic because it manipulates case law in an extremely disingenuous attempt to convince this Court to conclude that one must specifically mention race in order to properly alert an employer to the employee's reasonable belief that unlawful discrimination is at issue. Such contention is again made in light of the fact that the statute Plaintiff seeks protection under does not even specifically mention race, but rather asserts "that all persons should have the same right as is enjoyed by white citizens." 42 U.S.C. §1981. Nonetheless, the splitting of such hairs is a prejudiced attempt to distract this Court from Fifth Circuit precedent, which is that "a vague complaint, **without** any reference to an unlawful employment practice, does not constitute protected activity." *Dallas v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (emphasis added).

---

[2] "Based on the history of §1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable [in] classes of persons who are subjected to intentional discrimination because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended §1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. The Court of Appeals was thus quite right in holding that §1981, 'at a minimum,' reaches discrimination against an individual 'because [that individual] is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo-sapiens." *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609-13 (1987).

To support such contention, Defendant first cites *Brown v. United Parcel Serv., Inc.*, in which the Fifth Circuit Court held that "although [Plaintiff] complained about unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy before his termination, [Plaintiff] did not complain about race, color, religion, sex or national origin discrimination… [and therefore Plaintiff's complaints,] without more,… [are] not protected by Title VII." *Brown*, 406 F. App'x at 840. It is notable, however, that Defendant failed to mention that the Court reached such conclusion because Title VII "protects only opposition to discrimination __based__ on "race, color, religion, sex, or national origin."" *Id*.; *See also* 42 U.S.C. §2000e—2(a)(1) (emphasis added). As such, the Court held that because Brown's complaint did not mention that he felt that he was being treated unfairly because of his race, color, religion, sex, or national origin*,* such did not properly alert Brown's employer to Brown's reasonable belief that unlawful discrimination was at issue.

Also citing *Cochran,* Defendant concludes that Plaintiff's comments, like those in *Cochran*, are essentially "allegations of mistreatment and lack of opportunity at work— *with lack of context* as to whether such unfair treatment is race-related." [Doc. 80 at p. 631 (emphasis added)]. Turning specifically to *Cochran*, it is notable that the Court focused on the statements made by Plaintiff and whether she conveyed opposition to conduct Title VII makes unlawful. *Cochran v. Tri-State Truck Ctr., Inc.,* No. 3:12-CV-857 DPJ-FKB, 2014 WL 654634, at *3 (S.D. Miss. Feb. 19, 2014). Relying on such notions, the relevant *Cochran* determinations are that (1) *Cochran's* testimony explaining that she told a supervisor that "what they were doing to Angela is wrong" without "bringing up race" was not protected activity; and (2) a refusal to obey an order by employer to

8

not be around another employee is not engaging in protected activity when such refusal was expressed absent a reference to an unlawful employment practice *Id.* Ultimately, the *Cochran* Court determined that these allegations were too vague to constitute protected activity because they accordingly did not reference an unlawful employment practice under Title VII. *Id.; See also Davis v. Dallas Indep. Sch. Dist.,* 448 F. App'x 485, 493 (5th Cir.2011).

 Defendant's contentions that Plaintiff's facts are not distinguishable from both *Brown* and *Cochran* are simply frivolous and have absolutely no merit. Though Plaintiff made a complaint in his performance evaluation that did not specifically mention that he was being treated unfairly because of his race, it would be simply false to also allege that he made such complaint without any reference to an unlawful employment practice. A reasonable jury could also come to the same conclusion. In fact, Plaintiff did indeed make a complaint with a clear reference to an unlawful employment practice, which is that he was not treated equally compared to his white peers at his place of employment *because of the way he looked*. Furthermore, Defendant continues to downplay the subject-matter of the complaint to simply being that he complained because of his "looks" when the reality paints that he was complaining *because he received unequal treatment compared to his white colleagues because of the way he looked.* Ultimately, such argument indicating that the definition of the word "looks" is not easily linked to §1981 and the Supreme Court's interpretations of race is simply irrelevant when considering the complaint made by Plaintiff in his performance evaluation in its entire context.

Third, it is also improper for Defendant to Motion for such Reconsideration without proffering any reasoning as to what Defendant would have reasoned Plaintiff's complaint to be if it was not about his race. To reiterate, Plaintiff wrote the following in his performance evaluation: "the way someone treat[s] you, and the things they do to you – should never be determined by the way we look. There are no second-class people anymore; we should [sic] all be treated 'equal', but more times we are not because of our 'looks.'" [Doc. 53 ex. 3 p. 2]. The nature of this complaint is simple: Plaintiff complained that he was not being treated fairly compared to his white peers *because of the way he looked.*

In bad faith, Defendant, however, has manipulated such complaint to compare it to the like of those in *Brown* and *Cochran* in which both complaints made in these cases were simply complaints about being treated unfairly without providing any speculative basis as to the reasoning behind such unfair treatment. Defendant's callous attempt to use such precedented caselaw is extremely problematic, especially coupled with Defendant's proffered unreasonable burden that requires laypeople to provide a legally-based reasoning as to why they believe they are being mistreated. Such a burden to place on a layperson Plaintiff is simply too stringent, especially if they are not aware of certain legal protected classes that could provide coverage. Furthermore, it is clear that in these situations the plaintiffs are not the one discriminating, so it would be unreasonable to punish them for not being able to read their employer's mind, intentions, and implicit biases.

Besides, Plaintiff's case here can undoubtedly be distinguished from *Brown* and *Cochran* because he complained about unequal treatment that is certainly prohibited by

10

Title VII and §1981. Though Plaintiff did not use the term "race" specifically in his complaint, it is again important to reiterate that the complaint entailed that he was treated differently by Defendant employer because of the way he looked. Such reasoning provides succinct notice to Defendant employer that he speculated that he was being treated unequally—which is a unlawful employment practice under 42 U.S.C. §1981. As such, it is certainly notable to distinguish the fact that not even §1981 mentions race explicitly, but its overall mission is akin to the complaint made by Plaintiff – which is that he was not being treated the same as other employees *because of his looks.* As such, because Plaintiff provided context into his complaint that he was being treated unequally because of the way he looked, such could allow a reasonable person to conclude that he met his burden of referencing that such treatment was an unlawful employment practice. Furthermore, because a reasonable jury could disagree with Defendant's argument, its Motion for the Court to Reconsider dismissing such claim must be denied.

On top of this contention, it is also important to point out that in Defendant's Motion for Reconsideration, and in its Motion for Summary Judgment, it never proffered any reasoning as to what they suspected Plaintiff's complaint to entail if it did not properly signal that he was complaining about illegal discrimination. Certainly, when looking at the context of the language behind the complaint, a reasonable jury could deduce that Plaintiff complained that he was not being treated equally because he did not look like his white peers who were recipients of promotional opportunities. Defendant's manipulative attempt to cry ignorance should not be so-one sided in which a final decision on the merits is proper. Such is especially true when looking at the entire

11

context of Plaintiff's complaint he wrote in his performance review, coupled with he fact that Plaintiff has absolutely no physical abnormalities or disabilities that would allow a reasonable person to conclude that his complaint referred to anything else other than the color of his skin. Because such contentions made by Defendant have already been disputed by Plaintiff, such a Motion for Reconsideration is a petty and bigoted attempt by Defendant to avoid liability out of manipulative ignorance. If this Court were to condone such behavior, it would certainly not be a decision that would promote social equality, which is why Congress has afforded all persons such statutory protections. As such, it is certainly problematic and disheartening that Defendant has found that such an argument proffered in its Motion for Reconsideration is one that is not only fair, but one that would prevent manifest injustice.

 Because Defendant's arguments are simply conclusory and do not offer any valid reasoning as to why complaining about looks would not place Defendant on notice that Plaintiff was complaining about being treated differently than his white peers, a final judgment on the merits would be manifest injustice.  Procedurally, Defendant's Motion for Reconsideration is improper because it only rehashes Defendant's contentions that there is no genuine issue of material fact that warrants trial. Certainly, Courts should not punish Plaintiffs for the willful ignorance of Defendants, who clearly have not trained its Human Resources employees to be aware of such protections and complaints that arise from them. If complaining that someone is being treated less favorably because of his looks, when compared to his co-workers who are white, is not enough to put Defendant employer on notice, perhaps the problem lies within Defendant employer's inability to train personnel employed to recognize when it doesn't afford such protections to its

employees. As such, punishing Plaintiff for Defendant's ignorance would be manifest injustice.

## **CONCLUSION**

Defendant's motion is inadequate under Rule 59(e). Defendant had ample opportunity to expand on the issues in its Motion for Reconsideration in its Summary Judgment response and Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment but failed to do so.  There is absolutely no basis for overturning the Court's prior ruling, and Plaintiff requests that the Court deny the Defendant's Motion for Reconsideration of Order Granting Plaintiff's Motion for Reconsideration.

WHEREFORE, for the reasons outlined above, the Plaintiff moves that Defendant's Motion for Reconsideration of Order Granting Plaintiff's Motion for Reconsideration should be denied.

THIS, the 7th day of May, 2024.

                    Respectfully submitted,

                      s/Nick Norris
                     NICK NORRIS (MSB #101574)

OF COUNSEL:
WATSON & NORRIS, PLLC
4209 Lakeland Drive #365
Flowood, MS 39232
Phone: (601) 968-0000
Facsimile: (601) 968-0010
nick@watsonnorris.com

## **CERTIFICATE OF SERVICE**

I, NICK NORRIS , attorney for Plaintiff, do hereby certify that I have this day filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing or mailed, via United States Mail, postage prepaid, to all counsel of record.

THIS, the 7th day of May, 2024.

/s Nick Norris
NICK NORRIS
