**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**FREDERICK HUDDLESTON**                                                          **PLAINTIFF**

**V.**                          **CIVIL ACTION NO. 1:22-CV-0048-SA-RP**

**COOPER TIRE & RUBBER COMPANY**                            **DEFENDANT**

**PRETRIAL ORDER**

**1.**     A pretrial conference was held on September 27, 2024, at 10:00 a.m. at the United States Courthouse in Oxford, Mississippi before United States Magistrate Judge Roy Percy.

**2.**     The following counsel appeared:

    **a.**     For the Plaintiff:

| Name | Postal and Email Addresses | Telephone No. |
|---|---|---|
| Nick Norris | 4209 Lakeland Drive #365<br>Flowood, MS 39232<br>nick@watsonnorris.com | 601-968-0000 |

    **b.**     For the Defendant:

| Name | Postal and Email Addresses | Telephone No. |
|---|---|---|
| James William Manuel<br>Whitney J. Jackson | 188 E. Capitol Street, Suite 1000<br>Jackson, MS 39201 | (601) 948-8000 |

**3.**     The pleadings are amended to conform to this pretrial order.

**4.**     The following claims (including claims stated in the complaint, counterclaims, crossclaims, third-party claims, etc.) have been filed:

Plaintiff Frederick Huddleston ("Plaintiff") brings forth a retaliation claim under 42 U.S.C. 1981("Section 1981").

**5.**     The basis for this court's jurisdiction is:

Federal question, 42 U.S.C. §1331

**6.**     The following jurisdictional question(s) remain(s) [If none, enter "None"]:

None.

**7.** The following motions remain pending [If none, enter "None"] [Note: Pending motions not noted here may be deemed moot]:

Cooper Tire's Motions in Limine. [ECF No. 57].

**8.** The parties accept the following **concise** summaries of the ultimate facts as claimed by:

**a.** Plaintiff:

Plaintiff is a black male resident of Lee County, Mississippi. Plaintiff was hired on August 4, 1986, in an entry level position at The Good Year Tire & Rubber Company f/k/a Cooper Tire & Rubber Company. In 1995, Plaintiff was promoted to the position of Lead.

On October 20, 2020, the Defendant demoted Plaintiff to the position of Belt Reclaim in the Tire Assembly department, although his pay remained the same. Defendant offered no explanation to Plaintiff as to why he was being demoted. At that time, Plaintiff's position was given to Tim McBrayer, who is white and Plaintiff's former direct supervisor. It is undisputed that Tim McBrayer was demoted for performance problems. In contrast, while Defendant now contends Plaintiff was also demoted for performance problems, Plaintiff denies he had any such performance. Plaintiff performed the same position for fifteen (15) years with no allegations of performance problems until Plaintiff's white supervisor needed an open position he could be demoted to. Defendant has alleged that Plaintiff had issues with (1) keeping belts on the floor for the next crew to use, (2) being behind when employees came in following his crew, and (3) issues with e-mails, ETQ, and other computer issues. Plaintiff denies that he had any of these issues. Plaintiff also denies that he was ever counseled verbally or in writing about these issues. Additionally, had Plaintiff had any of these issues he would have received a written reprimand for such conduct, but he received no such write up.

Defendant claims that Plaintiff was given written warnings for his alleged performance issues. However, no such documents exist. The only document Defendant has been able to provide to support a performance issue is a performance evaluation prepared three months after Plaintiff was informed he would be demoted. Defendant's management clearly improperly lowered Plaintiff's evaluation even when criteria was perfect. Under the section of "Attendance" Plaintiff had zero missed days or hours of work. The Plaintiff performed perfectly and could literally not perform better on that issue. Instead of marking Plaintiff as "Exceeds Expectations" he was only marked "Performing Consistently." Defendant marked him as "Exceeds Expectations" except for the year Plaintiff's white supervisor needed a position to demoted into.

After receiving this trumped-up bad evaluation Plaintiff responded with a self-evaluation that complained people like him were no longer second class citizens and that he should not be treated different because of his looks. The only significant "looks" difference between Plaintiff and other leads was that they were white. Two to three months after being demoted Plaintiff's white supervisor, Mr. McBrayer, was moved back to his prior position allegedly because he performed well in Plaintiff's former position. In contrast, when Plaintiff's lead position became open again instead of allowing Plaintiff to move back into his prior position, the Defendant opened it up for applications so anyone could apply for it.

When Plaintiff applied for the promotion, there were fourteen (14) applicants. All of the applicants were white except for Plaintiff. Each applicant was scored on several different criteria, and Plaintiff scored the highest on those criteria. From there Defendant held interviews where it claims Plaintiff was disgruntled after he was demoted from his job without any explanation as to why and was being required to apply for his position again when his white supervisor who had been demoted for performance was just given his job back. Plaintiff denies that he was disgruntled during the interview and claims that he answered all questions in a professional manner. Instead of selecting Plaintiff, who is a black male in his late fifties at the time and had performed the position with good results for fifteen (15) years prior to his white supervisor needing a position to be demoted to, the Defendant chose to promote four (4) white employees significantly younger than Plaintiff. Heath Plunkett was the first selection. Mr. Plunkett had attendance issues, safety issues and less leader experience than Plaintiff. Zeb Ozbirn had attendance issues and less leader experience than Plaintiff. Jason White and Chris Derrick had less leader experience than Plaintiff.

In January 2021, another lead position became open, and Plaintiff applied for the position along with seven other white employees that were all substantially younger than Plaintiff. Plaintiff again scored the highest among all the candidates on the initial criteria. However, this time Defendant did not even attempt to put in the work to continue its sham process by not interviewing Plaintiff. Defendant falsely claims that it has a custom that it does not interview employees for positions if they have already interviewed for a position within six (6) months. Defendant has no such custom of not doing interviews for employees that already have received an interview within six (6) months. In October 2020, when Plaintiff applied for his lead position, Brandon Stewart applied for and received an interview for the position. Mr. Stewart is white.

In January 2021, when the lead position was open again, Brandon Stewart applied for the position and was given an interview even though he had been interviewed for the exact same position within six (6) months.

After the interviews without Plaintiff were conducted, Jared Sparks was selected in February 2021. Mr. Sparks is white and had less leadership experience, and no experience as a lead compared to Plaintiff fifteen years of experience as a lead.

     **b.**     Defendant:

In or around 1986, Cooper Tire hired Huddleston. In or around 1995, Huddleston was promoted to Tire Assembly Leader. In late 2019, Cooper Tire began restructuring its plant. Cole Goodson ("Goodson") was Cooper Tire's Tire Assembly Operations Manager at that time. Goodson, and other members of Cooper Tire's leadership, made decisions as to who should be demoted. Employees who displayed poor job performance were moved to other roles during the realignment. Both white and black employees were demoted in the reorganization.

On October 20, 2020, during a meeting with Goodson and Cooper Tire's HR Specialist, Denieta Cantrell ("Cantrell"), Huddleston was informed that he would be demoted as part of Cooper Tire's realignment. On that same day, Huddleston was also informed that his pay would remain the same for six months and then would change to his new position and was presented with a list of jobs to choose from. Huddleston chose the Scrap Salvage position–a Level 1 position. Huddleston was informed that his pay would change in six months, to correspond with his new Level 1 position.

In or around October of 2020, Huddleston applied for a Leader position. Based on his interview and work history, he did not receive that position. Sometime between January 6, 2021 and January 13, 2021, Huddleston applied for another Leader position. Huddleston was not selected to interview. Cooper Tire maintains a custom that if an employee reapplies for a position that they interviewed for less than six months ago, they may not reinterview the candidate.

On January 14, 2021, Huddleston received his performance evaluation. The performance evaluation was conducted by Paul Parks, one of Huddleston's supervisors. The performance evaluation reflected Huddleston's job performance from January 14, 2020 to January 14, 2021. Performance issues were noted in Huddleston's Performance Evaluation.

9.   **a.**   The following facts are established by the pleadings, by stipulation, or by admission:

1) Plaintiff was hired by Defendant on August 4, 1986.
2) In 1995, Plaintiff was promoted to a Leader position.
3) On October 20, 2020, Plaintiff was demoted to the position of Belt Reclaim in the Tire Assembly department.
4) In or around October of 2020, Huddleston applied for a Leader position.
5) After interviewing, Huddleston did not receive the Leader position he applied for in October of 2020.
6) Between January 6, 2021, and January 13, 2021, Huddleston applied for another Leader position.
7) Huddleston was not selected to interview for the position he applied for between January 6, 2021, and January 13, 2021.
8) Jared Sparks was hired into the Leader position in 2021.
9) On January 14, 2021, Huddleston received his performance evaluation.
10) On January 14, 2021, Huddleston conducted his self-evaluation.

  **b.**   The contested issues of fact are as follows:

1) Whether Plaintiff was retaliated against by not being selected to interview for Leader position in January of 2021;
2) The amount of back wages owed, if any;
3) The amount of compensatory damages owed, if any;
4) The amount of punitive damages owed, if any;
5) Whether Plaintiff engaged in protected activity under 42 U.S.C. 1981; and
6) Whether Plaintiff was retaliated against for engaging in protected activity by not being promoted to the Leader position in 2021.

  **c.**   The contested issues of law are as follows:

1) Whether Plaintiff should be promoted to a leader position or entitled to future wages; and
2) The amount of attorney fees and costs owed.
3) Whether the Court should have granted Plaintiff's Motion to Amend Complaint and/or Motion for Rule 72A Appeal.

**10.** The following is a list and brief description of all exhibits (except exhibits to be used for impeachment purposes only) to be offered in evidence by the parties. **Each exhibit has been marked for identification and examined by counsel.**

    **a.**    **JOINT EXHIBITS**

        J-1 Plaintiff's Performance Appraisals;
        J-2 Cooper Tire's HR Matrix Regarding Applicants' Scores for October 2020 Leader Position;
        J-3 Cooper Tire's Notes Regarding Performance of Employees Who Interviewed for October of 2020 Leader Position;
        J-4 Cooper Tire's HR Matrix Regarding Applicant Scores for January 2021 Leader Position;
        J-5 Cooper Tire's Reorganization Chart;
        J-6 Defendant's Position Statement.

    **b.**    To be offered by the Plaintiff:

        P-1 Defendant's Position Statement

    **c.**    To be offered by the Defendant:

        D-1 Denieta Cantrell's HR Notes

        Defendant objects to the following:

        Defendant objects to the use of Defendant's Position Statement as an exhibit as the Position Statement was only relevant to Huddleston's Title VII claim, not his remaining Section 1981 claim. Plaintiff previously filed two EEOC Charges. The first EEOC Charge was related to Huddleston's claims of race, age, and disability discrimination. The Second EEOC Charge was related to Huddleston's claim of retaliation.

        Notably, Plaintiff's Section 1981 retaliation claim based on the allegation in his Second EEOC Charge has been dismissed. *See* ECF No. 76 at p. 5. Furthermore, the Position Statement, to which Plaintiff seeks to use at trial, is solely related to Huddleston's First EEOC Charge. Therefore, the Position Statement is not relevant to his remaining Section 1981 retaliation claim, as the Position Statement addresses allegations of discrimination—not retaliation. Furthermore, the Position Statement is non-probative and use of it as an exhibit will be highly prejudicial to the Defendant.

**11**.    The following is a list and brief description of charts, graphs, models, schematic diagrams, and similar objects which will be used in opening statements or closing arguments, but which **will not** be offered in evidence: N/A

Objections, if any, to use of the preceding objects are as follows:

If any other objects are to be used by any party, such objects will be submitted to opposing counsel at least three business days before trial. If there is then any objection to use of the objects, the dispute will be submitted to the court at least one business day before trial.

12. The following is a list of witnesses Plaintiff anticipates calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial. The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary. As agreed by both parties, each party shall provide the other with notice of the witnesses they intend to call the following day by the conclusion of each trial day.

| Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|
| Fredrick Huddleston | Will | F/L/D | Shannon, MS |
| Tim McBrayer | May | F/L/D | Tupelo, MS |
| Evon Huddleston | May | F/L/D | Shannon, MS |
| Heath Plunkett | May | F/L/D | Tupelo, MS |
| Zeb Ozbirn | May | F/L/D | Tupelo, MS |
| Jason White | May | F/L/D | Tupelo, MS |
| Chris Derrick | May | F/L/D | Tupelo, MS |
| Brandon Stewart | May | F/L/D | Tupelo, MS |
| Jared Sparks | May | F/L/D | Tupelo, MS |
| Dr. Michael Boler | May | F/E/L/D | Tupelo, MS |
| Dr. Joseph Adams | May | F/E/L/D | Tupelo, MS |
| Dr. Brandon Petty | May | F/E/L/D | Tupelo, MS |
| Dr. Lauren Waldrop | May | F/E/L/D | Tupelo, MS |
| Terry Weeden | May | F/L/D | Tupelo, MS |
| Jerry Weeden | May | F/L/D | Tupelo, MS |

| | | | |
|---|---|---|---|
| Jerry Harris | May | F/L/D | Tupelo, MS |
| Theodis Foster | May | F/L/D | Tupelo, MS |
| Trelvie McMillen | May | F/L/D | Tupelo, MS |
| Carlos Owens | May | F/L/D | Tupelo, MS |
| Wonda Pargo | May | F/L/D | Tupelo, MS |
| Torrance Washington | May | F/L/D | Tupelo, MS |
| Richie West | May | F/L/D | Tupelo, MS |
| Terry McMickin | May | F/L/D | Tupelo, MS |
| Kevin Beeks | May | F/L/D | Tupelo, MS |
| Kimberly Vines | May | F/L/D | Tupelo, MS |
| Debra Humphries | May | F/L/D | Tupelo, MS |
| Anthony McJunkin | May | F/L/D | Tupelo, MS |
| Jennifer Sloan | May | F/L/D | Tupelo, MS |
| Josh Carr-Bias | May | F/L/D | Tupelo, MS |
| Eric Walker | May | F/L/D | Tupelo, MS |
| John Seymore | May | F/L/D | Tupelo, MS |
| Daniel Harlow | May | F/L/D | Tupelo, MS |
| Richard Clifton | May | F/L/D | Tupelo, MS |
| David Atkins | May | F/L/D | Tupelo, MS |
| Hugh Jones | May | F/L/D | Tupelo, MS |

Will testify live.

Will testify by deposition:

N/A

State whether the entire deposition, or only portions, will be used. Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise). All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial. All objections not submitted within that time are waived.

13. The following is a list of witnesses Defendant anticipates calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with

the trial judge before commencement of trial.  The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

| Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|
| Denieta Cantrell | Will | F/L/D | Tupelo, MS |
| Frederick Huddleston | Will | F/L/D | Tupelo, MS |
| Cole Goodson | Will | F/L/D | Tupelo, MS |
| Paul Parks | Will | F/L/D | Tupelo, MS |
| Alex Pegues | May | F/L/D | Tupelo, MS |
| Tim McBrayer | May | F/L/D | Tupelo, MS |
| Jared Sparks | May | F/L/D | Tupelo, MS |
| Brandon Stewart | May | F/L/D | Tupelo, MS |

Will testify live.

Will testify by deposition: NONE

State whether the entire deposition, or only portions, will be used.  Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise).  All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial.  All objections not submitted within that time are waived.

14.   This is a jury case.

15.   Counsel suggests the following additional matters to aid in the disposition of this civil action:

Ruling on pending motions.

16.   Counsel estimates the length of the trial will be _____3 -4_____ days.

**17.** As stated in paragraph 1, this pretrial order has been formulated (a) at a pretrial conference before a judicial officer, notice of which was duly served on all parties, and at which the parties attended as stated above, or (b) the final pretrial conference having been dispensed with by the judicial officer, as a result of conferences between the parties. Reasonable opportunity has been afforded for corrections or additions prior to signing. This order will control the course of the trial, as provided by Rule 16, Federal Rules of Civil Procedure, and it may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

ORDERED, this the  28th  day of October, 2024.

*Sharion Aycock*
UNITED STATES DISTRICT JUDGE

/s/*Nick Norris*
     Attorney for Plaintiff

/s/ *Whitney J. Jackson*
     Attorney for Defendant

Entry of the preceding Pretrial Order is recommended by me on this, the 3rd day of October, 2024.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE